Case 3:13-cv-00667-HTW-LRA   Document 1   Filed 10/25/13   Page 1 of 16

SOUTHERN DISTRICT OF MISSISSIPPI
F I L E D
OCT 25 2013
J T NOBLIN, CLERK
BY_____ DEPUTY

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
## JACKSON DIVISION

| | | |
|---|---|---|
| **REGIONS INSURANCE, INC.** d/b/a **REGIONS INSURANCE OF MISSISSIPPI** | | **PLAINTIFF** |
| VS. | CIVIL ACTION NO. 3:13cv667 HTW-LRA | |
| **ALLIANT INSURANCE SERVICES, INC.** and **JOHN and JANE DOES** | | **DEFENDANTS** |

### COMPLAINT
### (Jury Trial Requested)

Plaintiff Regions Insurance, Inc. d/b/a Regions Insurance of Mississippi files this Complaint against Defendant Alliant Insurance Services, Inc. and in support states the following:

### PARTIES

1. Regions Insurance, Inc. d/b/a Regions Insurance of Mississippi ("Regions") is an Arkansas corporation whose principal place of business is located at 1900 5th Avenue North, Birmingham, Alabama, 35203. Regions has offices in Madison County, Mississippi, located at 1020 Highland Colony Parkway, Suite 302, Ridgeland, Mississippi 39157.

2. Alliant Insurance Services, Inc. ("Alliant") is a Delaware corporation with its principal office in Newport Beach, California. Alliant's local office is located at 460 Briarwood Drive, Suite 400, Jackson, Mississippi 39206. Alliant may be served with process through its registered agent, Corporation Service Company, at 506 South President Street, Jackson, Mississippi 39201.

3. John and Jane Does are all persons or entities responsible for the actionable conduct subsequently described, the identity of which is unknown to Regions at this time.

01662001

Regions will seek to amend its Complaint promptly upon learning of the identity of such person(s).

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332. The amount in controversy exceeds the sum of $75,000.00 and complete diversity exists.

5. Alliant has engaged in business activities in Mississippi, has substantial continuous and systematic contacts with the State of Mississippi and this Judicial District, and committed substantial acts or omissions complained of in this Complaint within this Judicial District.

6. Venue is proper in this Judicial District under 28 U.S.C. § 1391.

## INTRODUCTION

7. Regions is a subsidiary of Regions Financial Corporation and offers a broad range of insurance services to its customers, including risk management services, business insurance services, employee benefits services, bond and surety services, and individual insurance services. Regions' customers include businesses and individuals from a broad range of industries across the nation.

8. William L. Painter, John A. Chalk, Jr., Angie M. Strickland and Jamie L. White are former employees of Regions. During their employment with Regions, they specialized in insurance and related services for the construction industry and were the primary Regions' employees servicing construction customers in Mississippi.

9. Before the termination of their employment with Regions on July 15, 2013, Painter, Chalk, Strickland and White wrongfully and intentionally conspired together and with their new employer Alliant to divert business from Regions to themselves and Alliant—a direct

competitor of Regions. Alliant actively recruited Painter, Chalk, Strickland and White and encouraged them to solicit and take the Regions customers that they serviced while employed there. The manner in which Painter, Chalk, Strickland and White terminated their employment and made their exit from Regions—literally under the cover of darkness and upon information and belief, taking Regions' property—was at the direction and encouragement of Alliant and violates multiple provisions of Painter, Chalk, Strickland and White's written employment agreements with Regions as well as their fiduciary obligations owed to Regions.

10. Alliant's improper actions have caused Regions to suffer a loss of business, a loss of contracts, a loss of goodwill and a loss of business reputation.

## FACTS

11. A chronological account of the relevant facts is set forth below.

12. In 1986, Chalk began work with Barksdale Bonding and Insurance, Inc. ("Barksdale"), the predecessor to Regions. Shortly thereafter, Painter began work with Barksdale. Before his initial employment with Barksdale, Painter was employed as an accountant for a Jackson, Mississippi accounting firm and had no experience in the bonding and insurance business and no insurance or bonding customers.

13. Over the next two decades, Barksdale and its principals helped develop Chalk's and Painter's business by providing basic training, providing a means to get and keep all insurance licenses, referring customers and insurance company contacts to them, and providing client contacts and other support. With the assistance and support of Barksdale, Chalk and Painter established a niche in the construction insurance and bonding industry. They provided insurance services including insurance, bond and surety work for Barksdale's customers. From

the late 1980s until the sale to Regions, Chalk and Painter earned substantial compensation and acquired ownership interests (stock) in Barksdale.

### Painter's and Chalk's Purchase Agreement with Regions

14. In 2007, Regions entered into negotiations with Barksdale for the purchase of certain assets of its insurance business. As a part of their negotiations, the owners of Barksdale, including Painter and Chalk, agreed, among other things, that in exchange for the purchase of Barksdale's assets, the owners would receive payment from Regions. The assets purchased by Regions included both intangible and tangible assets. The Purchase Agreement described intangible property as "Intellectual Property Assets ... going concern value, goodwill, telephone, telecopy and e-mail addresses and listing and those item listed in Schedules 3.17(c) and 3.17(d)." *See* Section 1.1(f) of the Purchase Agreement, a copy of pertinent portions is attached as Exhibit 1 to this Complaint.

15. The Purchase Agreement also included the acquisition of Barksdale's contracts with its employees and owners/producers. The contracts included employment agreements, confidentiality agreements, non-solicitation agreements and covenants not to compete. *See* Section 1.1(c).

16. As a part the Purchase Agreement, Chalk received $3,106,216.60 for his ownership interest, and Painter received $465,932.49 for his interest.

17. In addition to the transfer of the assets, including the contracts and goodwill of Barksdale, Chalk and Painter agreed to execute "Producer (Prior Owner) Agreements" ("Employment Agreements"). As described more fully below, these Employment Agreements contained two-year non-compete and non-solicitation covenants. Painter and Chalk each signed a separate Employment Agreement. *See* Section 2.2(c) of Exhibit 1.

**Painter's and Chalk's Producer (Prior Owner) Employment Agreements with Regions**

18. Effective January 1, 2008, Painter and Chalk agreed to be employed by Regions and agreed to abide by the terms of their respective employment agreements. A true and correct copy of Painter's Employment Agreement is attached as Exhibit 2 to this Complaint, and a true and correct copy of Chalk's Employment Agreement is attached as Exhibit 3 to this Complaint. The terms of these Employment Agreements are the same.

19. From 2008 until his recent resignation, Painter received compensation in addition to the $465,932.49 he received for his ownership interest in the assets of Barksdale. In 2012, Painter received $471,683.46 in compensation, and in 2013 he received a draw on his future expectation of income in the amount of $225,569.70. At the present time, he is overdrawn in the amount of $10,333.71.

20. From the sale of his ownership interest and his annual compensation from Regions, Painter earned a total of (approximately) $3,240,402.40 from 2008 through 2013.

21. From 2008 until his recent resignation, Chalk received compensation in addition to the $3,106,216.60 he received for his ownership interest in Barksdale. In 2012, Chalk received $105,523.14 in compensation from Regions. In 2013, Chalk received $57,181.25 from Regions as a draw on future compensation.

22. From the sale of his ownership interest and his annual compensation from Regions, Chalk earned a total of (approximately) $3,720,882.60 from 2008 through 2013.

23. As part of their employment with Regions, and in return for the aforementioned substantial compensation Regions paid to them, Painter and Chalk agreed to devote their "full time, attention, knowledge and skill to" Regions' business, and agreed to exert their "best efforts in obtaining insurance business for the exclusive use and benefit of" Regions. *See* ¶ 2 of Exhibit

2 and Exhibit 3. Painter and Chalk further agreed that all business obtained directly or indirectly through their efforts was "the sole and exclusive property" of Regions, and agreed that they did "not have any right to, or interest in, any such business or its renewal." *See id.* at ¶ 3.

24. The Employment Agreements recognize that Painter and Chalk, by virtue of their employment with Regions, would be privy to confidential information and proprietary information of Regions. *See id.* at ¶ 4. "Confidential Information" is defined in the Employment Agreements to include, among other items, customer information, financial information, proprietary and business information, methods of operation, internal files, marketing information, etc. *See id.* at ¶ 4(b). Painter and Chalk agreed to not disclose Regions' confidential information or improperly use it so as to "usurp a corporate opportunity." *See id.* at ¶ 4(c). Painter and Chalk further agreed to return all confidential information to Regions upon the termination of their employment, as it is "the sole and exclusive property" of Regions. *See id.* Finally, the Employment Agreements acknowledge Regions' right to prevent disclosure of this confidential and proprietary information. *See id.* at ¶ (4)(a).

25. The Employment Agreements prohibit Painter and Chalk from engaging, whether directly or indirectly, in the sale of insurance products in competition with Regions in the State of Mississippi, in cities where Regions is engaged in the insurance agency business at the time of their employment termination, and the areas within a 60-mile radius of those cities, for a period of two (2) years following the termination of their employment with Regions. *See id.* at ¶ 5(a).

26. Similarly, the Employment Agreements prohibit Painter and Chalk from soliciting, accepting, diverting, servicing or assisting "in the solicitation or acceptance of, any insurance business from any Customer that" Painter or Chalk were "responsible for producing, managing, supervising, or servicing for" Regions at the time of their employment termination or

during the preceding two (2) year period, for a period of two (2) years following the termination of their employment with Regions. *See id.* ¶ 5(b)(i).

27. The Employment Agreements further prohibit Painter and Chalk from hiring or soliciting to hire any employees of Regions to work for Painter or Chalk "or to work for any other agent, broker or insurer." *See id.* at ¶¶ 5(b)(ii) & 5(e).

### Strickland's and White's Associate Employment Agreements with Regions

28. On or about March 27, 2013, Strickland entered into an Associate Employment Agreement with Regions. A true and correct copy of Strickland's Associate Employment Agreement with Regions is attached as Exhibit 4 to this Complaint. On or about April 5, 2013, White entered into an Associate Employment Agreement with Regions. A true and correct copy of White's Associate Employment Agreement is attached as Exhibit 5 to this Complaint. The terms of these Associate Employment Agreements are the same.

29. In 2012, Regions paid Jamie White $71,658.06 and Angie Strickland $65,589.24. In 2013, they have received, respectively, $39,578.61, and $36,226.63 from Regions.

30. As part of their employment with Regions, and in consideration of the considerable compensation paid to them by Regions, Strickland and White agreed to devote their "full time to the business of Regions," and to exert their "best efforts in servicing existing insurance business and working with insurance producers on obtaining new and renewal business for the exclusive use and benefit of Regions." *See* ¶ 3 of Exhibit 4 and Exhibit 5. Strickland and White further agreed that all "[i]nsurance related or other business obtained directly or indirectly through" their efforts was the exclusive property of Regions, and agreed that they did "not have any right to, or interest in, any such insurance related or other business or its renewal." *See id.* at ¶ 6.

31. The Associate Employment Agreements recognize that White and Strickland, by virtue of their employment with Regions, would be privy to confidential information and proprietary information of Regions. *See id.* at ¶ 7. "Confidential Information" is defined in the Associate Employment Agreements to include, among other items, customer information, financial information, proprietary and business information, methods of operation, internal files, marketing information, etc. *Id.* at ¶ 29(c). The Associate Employment Agreements acknowledge Regions' right to prevent disclosure of this confidential and proprietary information to any third party or the public, including a right to seek injunctive relief to restrain such improper disclosure. *Id.* at ¶ 7.

32. The Associate Employment Agreements require White and Strickland to give Regions fourteen (14) days notice of their intended termination of their employment. *See id.* at ¶ 4.

33. The Associate Employment Agreements prohibit Strickland and White from soliciting, advising, diverting, accepting, servicing or assisting "in the solicitation or acceptance of, any insurance related business from any Insured Customer," and prohibit Strickland and White from encouraging, "expressly or implied, any Insured Customer to alter its business relationship with Regions" for a period of two (2) years following the termination of their employment with Regions. *See id.* ¶ 8(a)(1) and ¶ 8(a)(3).

### Alliant's Successful Effort to Hire Away Painter, Chalk, Strickland, and White and Take Regions' Customers

34. Beginning in at least April 2012, Alliant, and Jane and John Does associated with Alliant, began recruiting Painter to become employed at Alliant and open a new office in Jackson, Mississippi. The acquisition of Painter was part of Alliant's strategic plan to expand its presence in the Southeastern United States. During the course of the discussions with Painter,

Alliant was made aware that Painter was a party to agreements with Regions, including the agreements Regions acquired through its purchase of Barksdale, in which he had agreed not to compete with Regions or to solicit or encourage others to solicit employees or customers of Regions for a period of two years after his employment ended. Alliant also was made aware that Painter was obligated under his employment agreements with Regions, including the agreements Regions acquired through its purchase of Barksdale, not to use any of Regions' confidential information after his employment ended.

35. Despite its knowledge of the restrictive covenants and nondisclosure provisions in Painter's agreements, Alliant encouraged Painter to solicit Regions' customers that he serviced while employed there and to assist Alliant in recruiting Chalk, Strickland, White and other Regions employees to terminate their employment with Regions and go to work for Alliant in its new Jackson office. As a result of these efforts, Alliant was successful in hiring Painter, Chalk, Strickland and White and in taking away from Regions many of its customers they serviced while employed at Regions.

### Painter, Chalk, Strickland and White's Coordinated Termination of their Employment with Regions

36. Painter, Chalk, Strickland and White's termination of their employment with Regions was pursuant to a well-coordinated and timed plan among themselves and Alliant, which amounted to an improper and unlawful conspiracy.

37. On July 15, 2013, at approximately 4:00 p.m., Painter terminated his employment with Regions and informed Regions that he would be accepting a position with Alliant. Also that same day, at approximately 7:00 p.m., Strickland and White terminated their employment with Regions and informed Regions that they would be accepting a position with Alliant. At approximately 9:00 p.m. the same day, Chalk likewise terminated his employment with Regions

and informed Regions that he would be accepting a position with Alliant. Although all of their employment agreements provided that they give so many days notice of their resignation, none did.[1]

38. Furthermore, before Painter, Chalk, Strickland and White submitted their resignations to Regions, Alliant had already procured office space in Jackson, Mississippi for them, complete with equipment, supplies and everything Painter, Chalk, Strickland and White would need to begin their duties for Alliant on July 16, 2013, mere hours after they tendered their resignations to Regions.

39. Painter, Chalk, Strickland and White—at the direction and encouragement of Alliant—committed multiple breaches of their employment agreements with Regions, including but not limited to the provisions previously described. Indeed, by virtue of their accepting positions with Alliant, Painter, Chalk, Strickland and White are in direct competition with Regions. Furthermore, Alliant's improper "poaching" of Painter, Chalk, Strickland and White amounts to tortious interference with Regions' employment contracts with Painter, Chalk, Strickland and White.

40. Regions has received requests from multiple customers to move their business from Regions to Alliant. Painter, Chalk, Strickland and White's improper solicitation of these customers—at the direction and encouragement of Alliant—constitutes a breach of the non-solicitation provisions and other provisions contained in their employment agreements. Furthermore, Alliant's improper solicitation of Regions' customers—through Painter, Chalk, Strickland and White—amounts to tortious interference with business relations and tortious interference with contract.

---

[1] Painter and Chalk's employment agreements required thirty days notice of termination, and Strickland and White's employment agreements required fourteen days notice of termination.

41. Finally, Alliant could not possibly have solicited and obtained the significant number of Regions' customers that it did in such a short amount of time *and* be prepared immediately to serve those customers' needs without having and using proprietary and confidential information belonging to Regions. Alliant's taking of Regions' business and of Regions' proprietary and confidential information amounts to conversion of property and a violation of the Mississippi Trade Secrets Act.

42. Alliant's improper actions have caused Regions to suffer a loss of business, a loss of contracts, a loss of goodwill and a loss of business reputation.

### COUNT ONE: VIOLATION OF THE MISSISSIPPI TRADE SECRETS ACT

43. Paragraphs 1-42 are incorporated herein by reference.

44. As discussed above, Regions maintains certain information constituting proprietary and confidential trade secrets, including but not limited to customer lists, customer identities, business relations contact information, accounting and pricing data, marketing methods, and business strategies. Regions has invested considerable time, effort, and expense in the development and creation of this confidential information. Regions derives economic value from the confidential information not being generally known to the public or ascertainable by proper means. Therefore, Regions takes reasonable steps to maintain the secrecy of the information.

45. By virtue of their employment with Regions, Painter, Chalk, Strickland and White possessed and had access to confidential and proprietary information owned by Regions. Painter, Chalk, Strickland and White—at the direction and encouragement of Alliant—improperly and in violation of their employment agreements with Regions, disclosed this

confidential and proprietary information to Alliant in an effort to compete with Regions. Upon information and belief, the misappropriation of Regions' confidential information is ongoing.

46. The acquisition, disclosure and "misappropriation" of Regions' confidential information were accomplished by "improper means" as defined by Miss. Code Ann. § 75-26-3.

47. The improper misappropriation of Regions' confidential information has, is, and will likely cause economic harm and loss of business. Regions is entitled to damages for loss and injury to business pursuant to Miss. Code Ann. § 75-26-5 and Miss. Code Ann. § 75-26-7. Further, Regions is entitled to an award of attorney fees in bringing this action pursuant to Miss. Code Ann. § 75-26-9.

### COUNT TWO: TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS

48. Paragraphs 1-47 are incorporated herein by reference.

49. Alliant has wrongfully and intentionally interfered with Regions' established and prospective customers by soliciting those customers and encouraging the customers to cease doing business with Regions.

50. Alliant's actions were calculated to bring about damage to Regions and were neither right nor justifiable.

51. Alliant's actions resulted in the loss of contracts and business for Regions.

52. Alliant's wrongful actions have proximately caused and will continue to cause damages to Regions well in excess of one million dollars per year.

### COUNT THREE: TORTIOUS INTERFERENCE WITH CONTRACT (CUSTOMERS)

53. Paragraphs 1-52 are incorporated herein by reference.

54. Alliant has wrongfully and intentionally interfered with Regions' contracts with customers by convincing customers to cease business with Regions and begin doing business with Alliant.

55. Alliant's actions were calculated to bring about damage to Regions and were neither right nor justifiable.

56. Alliant's actions resulted in the loss of contracts and business for Regions.

57. Alliant's wrongful actions have proximately caused and will continue to cause damages to Regions well in excess of one million dollars per year.

**COUNT FOUR: TORTIOUS INTERFERENCE WITH CONTRACT (EMPLOYEES)**

58. Paragraphs 1-57 are incorporated herein by reference.

59. Alliant wrongfully and intentionally interfered with Regions' employment agreements by convincing Painter, Chalk, Strickland and White to terminate their employment agreements with Regions and begin working for Alliant.

60. Alliant's actions were calculated to bring about damage to Regions and were neither right nor justifiable.

61. Alliant's actions resulted in the loss of contracts and business for Regions.

62. Alliant's wrongful actions have proximately caused and will continue to cause damages to Regions well in excess of one million dollars per year.

**COUNT FIVE: CONVERSION OF PROPERTY**

63. Paragraphs 1-62 are incorporated herein by reference.

64. As described above, Painter, Chalk, Strickland and White's employment agreements clearly and explicitly define any business obtained through their efforts as Regions'

sole and exclusive property, to which Painter, Chalk, Strickland and White have no rights or interests.

65. At the direction and encouragement of Alliant, Painter, Chalk, Strickland and White have wrongfully and intentionally taken business away from Regions and to their new employer, Alliant.

66. Alliant's wrongful and intentional conversion of Regions' property, through Painter, Chalk, Strickland and White, was calculated to bring about damage to Regions and was neither right nor justifiable.

67. Alliant's wrongful and intentional conversion of Regions' property, through Painter, Chalk, Strickland and White, has resulted in the loss of contracts and business for Regions.

68. Alliant's wrongful actions have proximately caused and will continue to cause damages to Regions.

## COUNT SIX: CIVIL CONSPIRACY

69. Paragraphs 1-68 are incorporated herein by reference.

70. Painter, Chalk, Strickland and White's termination of their employment with Regions was pursuant to a well-coordinated and timed plan among Painter, Alliant, and Jane and John Does associated with Alliant, which amounted to an improper conspiracy.

71. Alliant, Painter, and Jane and John Does associated with Alliant acted in furtherance of this plan to divert business away from Regions, by improper and unlawful means, to their own economic advantage.

72. Alliant's wrongful actions have proximately caused and will continue to cause damages to Regions.

## COUNT SEVEN: PUNITIVE DAMAGES

73. Paragraphs 1-72 are incorporated herein by reference.

74. As evidenced from the foregoing, Alliant's wrongful actions, which have caused significant harm to Regions, were intentional, willful, and designed to hurt Regions' business.

75. Alliant's intentional interference with Regions' employment agreements with Painter, Chalk, Strickland and White was willful, wanton and in gross disregard of Regions' rights.

76. Alliant's intentional interference with Regions' actual and prospective contracts and business relations was willful, wanton and in gross disregard of Regions' rights.

77. Therefore, in addition to the compensatory damages Regions is entitled to recover from Alliant, Regions is also entitled to punitive damages from Alliant in an amount to be determined at trial.

## COUNT EIGHT: ATTORNEYS FEES AND EXPENSES AS AN ELEMENT OF PUNITIVE DAMAGES

78. Paragraphs 1-77 are incorporated herein by reference.

79. Regions is entitled to recover all costs and its attorneys' fees and expenses as an element of the punitive damages it is entitled to recover.

**ACCORDINGLY**, Regions respectfully requests that this Court enter an Order granting the following relief:

A. Finding in favor of Regions and awarding compensatory and punitive damages in an amount to be determined at trial;

B. Awarding Regions all costs and its reasonable attorneys' fees and expenses in bringing and prosecuting this action; and

C. Awarding Regions such other relief as this Court deems just and equitable.

Dated: October **25**, 2013.

                        Respectfully submitted,

**REGIONS INSURANC, INC. d/b/a REGIONS INSURANCE OF MISSISSIPPI,**

By: _/s/ Stephen J. Carmody_
One of Its Attorneys

OF COUNSEL:

R. David Kaufman, Esq., MSB # 3526
Stephen J. Carmody, Esq., MSB # 8345
Lauren W. Oaks, Esq., MSB #103896
Brunini, Grantham, Grower & Hewes, PLLC
Post Office Drawer 119
Jackson, Mississippi  39205
190 East Capitol Street, Suite 100
Jackson, Mississippi  39201
Telephone:  (601) 948-3101
Facsimile:  (601) 960-6902
dkaufman@brunini.com
scarmody@brunini.com
loaks@brunini.com