# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF MISSISSIPPI
### NORTHERN DIVISION

**REGIONS INSURANCE, INC.,**
**d/b/a REGIONS INSURANCE OF MISSISSIPPI**                                  **PLAINTIFF**

**V.**                                                              **3:13-CV-667-HTW-LRA**

**ALLIANT INSURANCE SERVICES, INC.**                               **DEFENDANTS**

## ORDER

This cause came before the Court for telephonic hearing on April 7, 2015, on Plaintiff's Motion to Compel [30]. Having considered the applicable law, the pleadings filed, and the arguments of counsel, the Court finds that the motion is well advised only in part and shall be granted to the extent set forth hereafter.

Plaintiff seeks to compel discovery on three categories of financial information: (1) documents showing revenue and commissions that Defendant received from customers transferred from Regions to Alliant via Painter, et al; (2) documents regarding the net worth of Defendant; and, (3) discovery regarding "other acts" and past conduct of Defendant for punitive damages purposes. A significant portion of the briefing relates to whether or not counsel have complied with the Court's requirement that the parties confer in good faith to resolve the issues in controversy prior to filing the motion. In this instance, the Court finds that counsel have attempted to resolve the issues; the objections are reasonable, as well as the requests. The disagreement between the parties (related to discovery regarding damage calculations and discovery regarding punitive damages) is

not frivolous, and both sides have ample authority supporting their positions. No sanctions or costs will be imposed on either side.

The Court notes Defendant's remarks regarding the extensive discovery previously provided by it in the underlying state court arbitration, *Regions v. Painter*. The undersigned, of course, is not privy to that discovery and is loathe to accuse Regions of pursuing the instant discovery "primarily for strategic reasons...which are substantially unrelated to the merits of its claims against Alliant...." [33, p. 13].

### (1) Documents showing revenue and commissions that Defendant received from customers transferred from Regions to Alliant via Painter, et al

The first category is sought through the following interrogatory and request for production:

> **REGIONS' INTERROGATORY NO. 6:** For the period of July 15, 2013, to the date of your interrogatory answers, state all revenues, payments, income, gross commissions, profit-sharing amounts, bonuses or other compensation or consideration that Painter and/or you received for each month and in total for each former Regions customer that transferred its business to Alliant after Painter began work at Alliant.

> **ALLIANT'S RESPONSE:** Alliant objects to this interrogatory on the basis that the information it seeks is irrelevant to the issues in this lawsuit and not reasonably calculated to lead to the discovery of admissible evidence. Alliant additionally objects to this interrogatory on the basis that the information it seeks is sensitive and proprietary so that any marginal relevance it may have, if any (which is disputed), is outweighed by the considerations that weigh in favor of protecting the information sought by this interrogatory. Alliant finally objects to this interrogatory as seeking information that Plaintiff has failed to justify as

relevant or reasonably calculated to lead to the discovery of admissible evidence either generally or specifically.

**REGIONS' REQUEST FOR PRODUCTION NO. 3:**
Produce all documents relating to all payments, revenues, income, commissions, profit-sharing amounts, bonuses (including loss ratio bonuses and commission volume bonuses), "splits" with other producers, individuals, companies, or entities, or other compensation or consideration that Painter, Chalk, and/or Alliant have received since July 15, 2013 as a result of the sale of insurance (including bonds and surety) products and/or service to customers formerly serviced by Regions that transferred their business to Alliant from July 15, 2013 to date. Your response should include the production of all bill commission statements, agency bill statements, carrier contracts, producer statements, invoices, and customer audits for all such former Regions customers.

**ALLIANT'S RESPONSE:** Alliant objects to this request for production on the basis that it is overly broad and unduly burdensome and on the ground that the documents it seeks are not relevant to the issues in this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence. Alliant additionally objects to this request for production on the basis that documents it seeks are confidential and proprietary and/or contain sensitive, confidential information about third-parties such that the considerations weighing in favor of their protection significantly outweigh any possible interest Regions has in obtaining such documents; although Alliant further asserts that Regions has no legitimate need for the documents sought by this request.

Regions argues that this discovery is directly relevant to and necessary for Regions' third-party beneficiary claim against Alliant, as well as its claim for damages for tortious interference. Its request is limited for the period of time from July 15, 2013, to the present, and Regions attests that its expert, Van Hedges, is unable to complete his

report because he does not have this information.  Alliant contends that Regions would only be entitled to determine its net profit damages based upon a calculation of its own historical revenue— and, that the discovery sought is irrelevant to that method of accounting.  It cites the *Ishee v. Peoples Bank*, 737 So. 2d 1011 (Miss. Ct. App. 1998), in support of its contention that the discovery sought by Plaintiff is irrelevant.

Regions interprets  *Ishee* as recognizing that consideration of a plaintiff's past earning is only one recognized method of proving lost profits.  *Id.* at 1013.  It argues that because its expert requires the information to be able to give a comprehensive opinion on Regions' damages, it is entitled to the discovery for this purpose.

The Court is unable to conclude under the authority presented by Alliant that Plaintiff's damage calculation would be limited to its net lost profits (not gross lost profits) as shown by calculating its historical revenue, reduced by operating costs.  The method of the appropriate damage calculation may be subject to dispositive motions or *in limine* motions, but the Court is reluctant to bar calculation methods at the discovery stage— particularly when a party's expert attests that the discovery is needed. Accordingly, the motion to compel shall be granted as to Interrogatory No. 6 and Request for Production No. 3.

### (2) Documents regarding the net worth of Alliant

The second category of discovery at issue concerns the "net worth" of Defendant for purposes of punitive damages.  The discovery requests are quoted as follows:

**REGIONS' INTERROGATORY NO. 5:** State your current net worth.

**ALLIANT'S RESPONSE:** Alliant objects to this interrogatory on the basis that the information it seeks is irrelevant to the issues in this lawsuit and not reasonably calculated to lead to admissible evidence. Alliant additionally objects to this interrogatory on the basis that the information it seeks is highly sensitive and proprietary so that any marginal relevance it may have, if any (which is disputed), is outweighed by the considerations that weigh in favor of protecting the current net worth of Alliant. Alliant finally objects to this interrogatory as seeking information that Plaintiff has failed to justify as relevant or reasonably calculated to lead to the discovery of admissible evidence either generally or specifically.

**REGIONS' REQUEST FOR PRODUCTION NO. 4:** Produce all documents that reflect Alliant's most recent net worth or from which it may be calculated.

**REGIONS' REQUEST FOR PRODUCTION NO. 5:** Produce all financial statements that Alliant has prepared or that have been prepared for Alliant for the past three years.

**REGIONS' REQUEST FOR PRODUCTION NO. 6:** Produce all schedules reflecting or from which Alliant's current assets and liabilities may be determined.

**ALLIANT'S RESPONSE** (to 4, 5 & 6)**:** Alliant objects to this request for production on the basis that it is vague, overly broad and unduly burdensome and on the ground that the documents it seeks are neither relevant to the issues in this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence. Alliant additionally objects to this request for production on the basis that documents it seeks are confidential and proprietary and/or contain sensitive, confidential information about third-parties such that the considerations weighing in favor of their protection significantly outweigh any possible interest Regions has in obtaining such documents; although Alliant further asserts

that Regions has no legitimate need for the documents sought
by this request.

Whether discovery is allowed regarding a private company's net worth, for punitive damages purposes, has been considered by numerous courts with conflicting holdings. The parties' memoranda reflect the diverging opinions, and there is law supporting each parties' view. In *Francois v. Colonial Freight Systems, Inc.,* No. 3:06cv434WHB, 2007 WL 679998 (S.D. Miss. March 2, 2007), the undersigned followed Judge Roper's ruling in *Price v. Lockheed Martin Corporation, et al*, No. 4:04CV123LN, 2006 WL 1686568 (S.D. Miss. June 19, 2006). The discovery was not allowed, but the defendants were directed to bring to trial a sworn financial statement outlining their net worth. Judge Roper specifically stated:

> ... This interrogatory seeks information on the Defendants' net worth. Fair and reasonable parameters of discovery on the issue of the net worth of a defendant is a difficult issue for a court. Certainly, where punitive damages are appropriate, the wealth of a Defendant is a legitimate element of inquiry and proof. A Plaintiff should be allowed an adequate opportunity to prove a legitimate punitive damage claim. On the other side of the balance, by simply inserting a claim for punitive damages in a pleading, a plaintiff should not be able to have *carte blanche* access to the private financial life a defendant. A reasonable balance is struck by requiring the Defendants to bring to trial a sworn financial statement, fairly outlining, under the penalty of perjury, the Defendant's assets, liabilities, and net worth. Thus, the Motion to Compel will be granted as to this Interrogatory, but only to the extent that the financial statement shall be held and maintained as private by the Defendant and the Defendant's attorney until such time as the court rules that punitive damages are an appropriate subject for the jury's consideration.

*Id.* at *3.   *See also, Francois,* 2007 WL 679998 at *4.

A similar approach was also utilized by Judge Sumner in *Brennan's Inc. v. Brennan*, No. 3:06cv694-TSL-JCS, 2009 WL 3156540 (S.D. Miss. Sept. 25, 2009) ("... prior to a ruling by the district court that the matter should be set for trial,  a party is usually not required to provide its financial information bearing on the question of punitive damages.").  The undersigned is aware that in this district Defendants have most often been  directed to have available at trial attested financial statements or tax returns revealing their net worth when punitive damages are an issue.[1]

Regions has requested documents related to Alliant's current net worth, which it contends includes financial statements for the past three years and schedules reflecting Alliant's current assets and liabilities.   Regions suggests that discovery is required in order for counsel to be able to fairly assess the value of its punitive damage claim prior to the settlement conference to be conducted in this case.  Further, if Alliant's net worth is stated as a low figure, Regions contends that there would be no time available to disprove the figure and impeach the accounting or calculations.  A protective order would alleviate Alliant's concerns about the sensitive nature of the information, Regions contends.  It cites two Northern District of Mississippi cases in support of its right to this discovery, *Estate of Boles ex rel. Price v. Nat'l Heritage Realty, Inc.*, No. 4:07cv99-SA-DAS, 2010

---

[1]*But see Jefferson Davis County School District v. RSUI Indemnity Company,* No. 2:08cv190-KS-MTP, 2009 WL 1658478 (S.D. Miss. June 11, 2009) (Judge Parker directed defendants to provide net worth discovery under different circumstances).

WL 2985824, *1 (N.D. Miss. July 27, 2010) and *Smith v. Schmidt and McGarland Firm*,

No. 3:06CV25-B-A, 2008 WL 1716646, *1 (N.D. Miss. Apr. 9, 2008).

Alliant distinguishes the *Estate of Boles* and *Smith* cases from the facts and

circumstances herein and presents a thorough review of various decisions regarding this

issue in its Memorandum [33, pp. 13-24]. It urges that this Court adopt the approach of

the New York courts, since its punitive damage statute is similar to Mississippi's (Miss.

Code Ann. § 11-1-65(1)(c)).[2] This statute, as well as New York and a minority of states,

---

[2]As noted by the parties, Mississippi law requires a bifurcated procedure wherein a compensatory damages award must be awarded before addressing any issues related to punitive damages. Miss. Code Ann. § 11-1-65 is quoted in part as follows:

(1) In any action in which punitive damages are sought:
(a) Punitive damages may not be awarded if the claimant does not prove by clear and convincing evidence that the defendant against whom punitive damages are sought acted with actual malice, gross negligence which evidences a willful, wanton or reckless disregard for the safety of others, or committed actual fraud.

(b) In any action in which the claimant seeks an award of punitive damages, the trier of fact shall first determine whether compensatory damages are to be awarded and in what amount, before addressing any issues related to punitive damages.

(c) If, but only if, an award of compensatory damages has been made against a party, the court shall promptly commence an evidentiary hearing to determine whether punitive damage may be considered by the same trier of fact.

(d) The court shall determine whether the issue of punitive damages may be submitted to the trier of fact; and, if so, the trier of fact shall determine whether to award punitive damages and in what amount.

...

requires a jury verdict for compensatory damages before an additional and separate

hearing is conducted by the Court for deciding the propriety of a jury's consideration of a

punitive damages award in plaintiff's favor.  The New York authority Alliant cites

confirms that it does not allow the discovery of financial information from a defendant

pre-trial nor at any time prior to the determination the plaintiff's punitive claim may be

submitted to a jury.  *Davis v. Ross,* 107 F.R.D. 326, 327 (S.D.N.Y. 1985) (discovery of

defendant's net worth not allowed unless and until special verdict entered finding plaintiff

entitled to punitive damages).  Regions argues that if this approach is used, little or no

time would then be available for discovery before the district court moves forward with

the punitive phase of a trial.

Conversely, in *Smith v. Schmidt and McGarland Firm,* Judge Alexander held that

defendants' "net worth is relevant and falls within the permissible scope of discovery."

2008 WL 1716646 at *1.  Because the plaintiff set forth detailed facts supporting the

punitive damages claims, the court held that the claim was not merely conclusory.  *Id.*

Citing *Bessier v. Precise Tool & Engineering Co.*, 778 F. Supp. 1509, 1514 (W.D.Mo.

1991), Judge Alexander held that net worth statements are discoverable even if they may

not be admissible at trial if plaintiff makes a prima facie case for an award of punitive

damages.  *Id.*  She sympathized with defendants' privacy concerns but pointed out a delay

caused to a trial when discovery regarding net worth had not been allowed prior to trial.

Judge Alexander fashioned an "attorneys' eyes" procedure directing that the requested

information be filed under seal with the court, and provided *only to the attorney.*  The

attorney was specifically prohibited from revealing the contents to any other person, including his client, until such time as it was offered in evidence at trial.

Citing the *Smith v. Schmidt and McGarland Firm* case, the court in the Northern District case of *Estate of Boles* also allowed the net worth discovery, subject to a general protective order. 2010 WL 2985824 at *1-2. The court also directed that the plaintiff bear the reasonable costs of production and noted that the plaintiff had alleged sufficient facts to "demonstrate a real possibility that punitive damages will be an issue." *Id.* It cited two other cases allowing net worth discovery for several years prior to the trial, including *EEOC v. HWCC-Tunica, Inc.,* 2008 WL 4533906, *8, 2008 U.S. Dist. LEXIS 85830, *20 (N.D. Miss. Oct. 6, 2008) (Judge Alexander directed the financial information be produced "for attorneys eyes only"), and *Bessier v. Precise Tool & Eng. Co., Inc.* 778 F. Supp. 1509, 1514 (W.D. Mo. 1991). *Id.* at *1, n. 1.

In the case before the Court, Alliant is not a publicly owned corporation, and its stock is not publicly traded. Alliant has attached the Affidavit of Ted Filley, Executive Vice President, Finance and Corporate Development, and Chief Accounting Officer for Alliant [33-2]. He avers that the financial information sought is highly confidential, sensitive, and proprietary and not made known publicly, particularly to competitors such as Regions. He also attests that should the information become relevant for purposes of this lawsuit, he will be able to:

> ...expeditiously provide a sworn and accurate approximation of Alliant's
> net worth at any future point in time when requested or directed to do so,
> which approximation I will further support by disclosing, under oath, the

> most recent determination of Alliant's net worth as made by Alliant's
> independent auditors.

[33-2, p. 4].

Mr. Filley also confirms that he would be able to provide a sworn statement of

Alliant's approximate net worth at any particular future point in time within no more than

1 business day after being asked or ordered to do so. [33-2, p. 2].  He also discusses his

difficulty in understanding the scope of the net worth information and documentation that

Regions demands.

Regions distinguishes the undersigned's "balancing approach" used in the

*Francois* holding by claiming that it did not "simply insert a claim for punitive damages

in a pleading."  Instead, Regions sets forth a detailed rendition of its versions of the facts

which it claims would entitle it to a punitive damages award.   As Regions points out, the

Mississippi state courts do allow discovery of a defendant's net worth during the

discovery period.  *Indep. Life & Accident Ins. Co. v. Peavy*, 528 So. 2d 1112, 1117 (Miss.

1988); *see also Hunter v. Williams,* 92 So. 2d 367, 369 (Miss. 1957).

Each side has valid arguments for its position, and the rulings have been

inconsistent throughout the courts.  A review of the rulings by magistrate judges and

district judges throughout the Fifth Circuit reveals that the majority of those opinions

allow net worth discovery during the discovery period.  *See Amin-Akbari v. City of*

*Austin, Texas, et al,* Civil Action No. A-13cv472, 2014 WL 4657491 (W.D. Tex. Sept.

16, 2014), *citing Mid Continent Cabinetry, Inc. v. George Koch Sons, Inc.*, 130 F.R.D.

149, 161 (D. Kan. 1990) (when punitive damages claim asserted "...a majority of federal courts permit 'pretrial discovery of financial information of the defendant without requiring plaintiff to establish a *prima facie* case on the issue of punitive damages'"); *Smith v. Detar Hospital, LLC*, No. V-10-83, 2011 WL 6217497, *8 (S.D. Tex., Dec. 14, 2011) (parties may discover defendant's net worth where punitive or exemplary damages may be awarded, reviewing Texas state law as well as federal cases in Texas); *Hunter v. Copeland*, No. 03-2584, 2004 WL 1562832, *3-4 (E.D. La. July 12, 2004) (distinguishing an Alabama ruling and allowing discovery relevant to punitive damages during discovery period).

The net worth discovery is obviously relevant to the issue of punitive damages— but, precisely when does the relevancy occur? When a compensatory verdict is obtained and the plaintiff is allowed by the trial court to move forward on the issue of punitive damages? Or, simply when a plaintiff requests punitive damages in his complaint? Regions argues that it must have time to challenge the net worth discovery, as well as prepare for the presentation of "other bad acts" evidence at the hearing on punitive damages. This argument is persuasive, particularly because Regions has not "simply inserted a claim for punitive damages in a pleading." Instead, it has set forth the alleged facts with particularity which, if proven, would establish a *prima facie* showing of entitlement to punitive damages. The federal courts in Texas, citing Texas state law, do not even require such a showing before allowing net worth discovery. *See Smith v. Detar Hospital*, 2011 WL 6217497 at *8.

The undersigned finds that a balancing approach should be utilized regarding net worth discovery, balancing the needs of a plaintiff to prove their entitlement to punitive damages versus the consideration of the sensitive and proprietary nature of a defendant's financial information.  As Judge Alexander noted, "[i]t is only fair that [plaintiff's] counsel have some idea of the nature and extent of the net worth of the [defendant] going into the trial; moreover, if the documentation presented is deficient, [plaintiff's] counsel should have the means to correct that before trial."[3]  *Liberty Mut. Ins. Company v. Tedford*, No. 3:07cv72-A-A, 1008 WL 2080930, *7, n. 2 (N.D. Miss., May 13, 2008).  In doing so, the following factors will be considered before allowing net worth discovery during the initial discovery period:

1.    **The strength of plaintiff's claim for punitive damages.**  Although the undersigned will not attempt to "pre-judge" a plaintiff's case or its claim for punitive damages, the Court will require that plaintiff set forth in particularity the facts it contends establish a basis for punitive damages, i.e., a *prima facie* claim.  No discovery (during the normal discovery period) will be allowed when there is utterly no factual basis for punitive damages or the claim is clearly frivolous.

2.    **Whether or not the company is public or private**.  The concerns for the privacy of a publicly held company are not as significant, as the information requested is

---

[3]Again, Judge Alexander referred to a prior unnamed case wherein the trial had to be delayed in order for defendant to locate and update a previously sealed net worth statement.

normally available.  Therefore, a public company should produce, if requested, at least a certified statement of its net worth during discovery and supporting documentation.

       3.    **The burden and expense of the discovery.**  The undersigned will consider the difficulty and expense regarding net worth discovery and/or other punitive damage discovery.  It may be that only a certified net worth statement (by an independent auditor) will be allowed, rather than a multitude of supporting documents. The Court will consider requiring plaintiff to pay costs of production if many documents are to be produced.

       4.    **Whether or not the defendant files a dispositive motion regarding punitive damages.**  If the defendant intends to file (and files) a motion requesting the district judge to dismiss the claim for punitive damages prior to the end of the discovery period, discovery regarding net worth and punitive damages may be disallowed until a decision is made or delayed until after the normal discovery period.

       5.    **Whether or not the district judge will delay the trial on punitive damages for a period of time following a verdict for compensatory damages.**  There may be district judges who will continue the trial upon motion of the plaintiff to allow for net worth and punitive damage discovery following a favorable verdict for compensatory damages.  If so, the balancing inquiry will weigh in favor of not allowing the discovery until and unless a punitive damage hearing is set.

       6.    **Whether a protective order or "attorneys' eyes only" protective order will allay the privacy concerns of defendant.**  Particularly when the discovery is by one

competitor to another, such as the case herein, the undersigned will consider requiring an "attorneys' eyes" only protective order.

7.   **Whether or not the defendant attests to its ability to produce a current certified net worth statement within a short period of time.**  In this case, Alliant produced a sworn statement by Ted Filley, its Chief Accounting Officer, assuring the Court that he could produce such a statement by independent auditors within 1 business day.  Under some circumstances, this sworn assurance by the defendant may tip the scale in favor of delaying net worth discovery until the trial.

8.   **The relationship of the parties.**  The Court will be more apt to protect financial information from being produced to competitors.

In this case, the undersigned has utilized this "balancing approach" and finds that Regions is entitled to net worth discovery at this stage.  However, counsel stated to the Court that if the net worth figure given for Alliant was high enough, he would not need to conduct additional discovery regarding its worth.  Therefore, Alliant shall only be required to provide a current net worth statement, certified by independent auditors, with any supporting documentation that the auditors include with its statement.  The motion to compel is **granted** as to Interrogatory No. 5, subject to an attorneys' eyes only protective order, and **denied** without prejudice as to Request for Production 4, 5, & 6.  Regions may re-urge its motion to compel regarding additional supporting documentation if there is good cause to do so after review of the net worth statement.

## (3) Discovery regarding "other acts" and
## past conduct of Defendant for punitive damages purposes

Regions propounded the following interrogatory and request for production, and

Alliant responded as quoted below:

**REGIONS' INTERROGATORY NO. 4:** Have you ever been a party to
any other lawsuit or litigation involving the breach of post-employment
restrictive covenants, including but not limited to non-competition
provisions, non-solicitation provisions, and non-disclosure provisions, or in
which the court assessed a punitive damages award against you? If your
answer is affirmative, for each such lawsuit or litigation in which you were
a party state:

     a.     the year in which the lawsuit or litigation was filed;

     b.     the court or agency in which the lawsuit or litigation
              was filed (include the docket number, if available);

     c.     whether you were the plaintiff, defendant, third-party
              defendant, or intervenor;

     d.     the claims made in the lawsuit or litigation;

     e.     the outcome of the lawsuit or litigation;

     f.     whether you gave a deposition or testified at trial in the
              lawsuit or litigation and, if so, whether you have a
              copy of the transcript of your testimony; and

     g.     the names of the lawyers representing the various
              parties to the lawsuit or litigation.

**ALLIANT'S RESPONSE:** Alliant objects to this interrogatory on the
basis that it is vague, overly broad and unduly burdensome including for the
reasons that it is unlimited in time. Alliant additionally objects to this
interrogatory on the basis that the information it seeks is neither relevant to
the issues in this lawsuit nor reasonably calculated to leave to the discovery
of admissible evidence.

**REGIONS REQUEST FOR PRODUCTION NO. 7:** Produce all
pleadings and testimony of Alliant in each lawsuit and litigation identified
in response to Interrogatory No. 4.

**ALLIANT'S RESPONSE:** Alliant objects to this request for production on
the basis that it is vague, overly broad and unduly burdensome and on the
ground that the documents it seeks are neither relevant to the issues in this

lawsuit nor reasonably calculated to lead to the discovery of admissible evidence. Alliant additionally objects to this request for production on the basis that documents it seeks are protected by protective orders and/or confidentiality agreements.

The undersigned finds that Regions is entitled to some of its "other claims" discovery under the same balancing approach utilized above. As Regions points out, Miss. Code Ann. § 11-1-65 (e) requires the factfinder to consider the following in determining the amount of punitive damages:

> ... the defendant's financial condition and net worth; the nature and reprehensibility of the defendant's wrongdoing, for example, the impact of the defendant's conduct on the plaintiff, or the relationship of the defendant to the plaintiff; the defendant's awareness of the amount of harm being caused and the defendant's motivation in causing such harm; the duration of the defendant's misconduct and whether the defendant attempted to conceal such misconduct; and any other circumstances shown by the evidence that bear on determining a proper amount of punitive damages. The trier of fact shall be instructed that the primary purpose of punitive damages is to punish the wrongdoer and deter similar misconduct in the future by the defendant and others while the purpose of compensatory damages is to make the plaintiff whole.

Because a plaintiff must put forth such evidence to the factfinder, discovery related to past conduct may lead to admissible evidence. However, the Court shall limit the request to the past 10 years, beginning on January 1, 2005. Additionally, Alliant shall only be required to respond to (a) (b) & (c), listing the lawsuits against it and enough identifying information in order that Regions shall be able to locate the court files. It is overly burdensome for Alliant to produce pleadings and the other information requested, particularly since the information should be publicly available upon reasonable search and inquiry. If any of the cases are subject to protective orders, the Court may reconsider

what information should be given regarding those cases.  The responses should be produced, subject to a protective order, but not "for attorneys' eyes only."  The motion to compel is **granted** as to Interrogatory No. 4 (a)(b)(c) and **denied** as to No. 4 (d)-(g) and Request for Production No. 7.

IT IS, THEREFORE, ORDERED that Regions' motion to compel is **granted in part and denied in part** as set forth herein.  Alliant shall respond to the discovery requests on or **May 26, 2015.**

IT IS FURTHER ORDERED that counsel shall confer and prepare the proposed protective order and attorneys' eyes only protective order to be utilized for the production.

SO ORDERED, this the 24 day of April 2015.

/s/ Linda R. Anderson
 UNITED STATES MAGISTRATE JUDGE